IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
Civil Action No.: 5:21-cv-85

| | |
|---|---|
| DESIREE LINDSAY, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | **COMPLAINT** |
| ) | |
| LOWE'S COMPANIES, INC., & ) | **JURY TRIAL DEMANDED** |
| LOWE'S HOME CENTERS, LLC, ) | |
| ) | |
| Defendants. ) | |

## I. INTRODUCTION

1. Desiree Lindsay ("Plaintiff" or "Lindsay") began her time with Lowe's Companies, Inc. and Lowe's Home Centers, LLC ("Defendants" or the "Company") on or around May 16, 2016, in Charlotte, North Carolina. After years of diligent service, she received a transfer to the Company's corporate office in Moorseville, North Carolina in 2019.

2. While Lindsay expected this transfer to be a step up in her career, it was anything but. Lindsay, who suffers from a visible Thyroid condition, began to be harassed by her increasingly unruly coworkers. The harassment steadily increased, leading to offensive racial comments and insubordination from her staff.

3. Lindsay made numerous complaints to management about the racial language and crude jokes about her medical condition. When management did nothing, she reported it to human resources. Rather than address the issue, the Company decided to simply terminate Lindsay instead.

4. Plaintiff now turns to this court to be made whole for her harms and losses. Plaintiff brings this action against Defendants for violations of North Carolina Public Policy (Count I), Title VI of the Civil Rights Act of 1964 (Count II), The Americans with Disabilities Act (Count III), and for violations of 42 U.S.C. § 1981 (Count IV).

## II. PARTIES, JURISDICTION AND VENUE

5. Plaintiff resides in Mecklenburg County, North Carolina.

6. Lowe's Companies, Inc. is a North Carolina corporation, with its principal office located at 1000 Lowe's Boulevard, Mooresville, North Carolina 28117.

7. Lowe's Home Centers, LLC is a North Carolina limited liability company, with its principal office located at 1000 Lowe's Boulevard, Mooresville, North Carolina 28117.

8. Venue is proper in the Western District of North Carolina, Statesville Division, because: Lowe's Companies, Inc. and Lowe's Home Centers, LLC have a substantial presence in Mooresville, North Carolina and conducts a great deal of business in Mooresville. At all relevant times, Plaintiff worked out of the 1000 Lowe's Boulevard, Mooresville location and the facts and circumstances of the case arise in Mooresville.

## III. FACTUAL STATEMENT

9. Lindsay relocated to the Company's corporate office on or around September 13, 2019. Shortly after arriving there, she started a new pilot program, called Leap Frog.

10. Lindsay suffers from Hyperparathyroidism, a thyroid-related disability. Lindsay's thyroid issue causes her to experience extremely high blood pressure, migraine headaches, and a large growth on her neck. Her condition required her to constantly monitor her blood pressure, in addition to eating a regulated diet only at certain hours of the day. In October

2

Case 5:21-cv-00085-KDB-DCK   Document 1   Filed 06/03/21   Page 2 of 11

2019, she approached her manager, Matt Campbell, and informed him she would need to have surgery related to a complication from her disability. As far as Lindsay knew at the time, this surgery would take place in or around December 2019. Due to increased work load, Lindsay offered to move the surgery to January 2020, and Campbell approved the move.

11. Later that same month, Campbell offered Lindsay a Trainer position. Lindsay declined the offer. The position did not offer any increase in pay or added benefits. But Lindsay knew of three Trainers at the Charlotte location, who all happened to be white, who were given a higher pay grade along with the benefit of having every other weekend off upon becoming Trainers. Lindsay was not offered any of these benefits.

12. In late October 2020, management continued to add new staff to the pilot program team. On or around October 28, Jessica Cook and Sandy Brown joined Lindsay's team.

13. Almost immediately, the two newcomers began to cause problems. Cook, Brown, and another coworker, Juliet Miller, engaged in insubordinate behavior, including not clocking in or out for their shifts or lunch breaks, reading books, surfing the web, and playing games on their cellphones while at work. All three of these individuals were white. Lindsay reported these issues to Campbell and Gabriella Rodriguez, another manager. They told Lindsay not to worry. They were aware of the behaviors, they said, and were working to correct them.

14. Shortly thereafter, the team member's schedules were suddenly changed without warning.

15. On or around December 11, 2019, Brown said, in front of Lindsay, Dawn Anderson (one of the shift leaders), and other coworkers, that she hated working with black people. She continued: "Y'all (black workers) are loud, chaotic, and lazy." Lindsay, who is black, took offense to Brown's openly racist comments. She responded that Brown's remarks were not

3

welcome. Lindsay informed her that she would be reporting the bigoted comments to human resources as soon as possible.

16. Later that same day, Lindsay and another coworker, Teria, reported the racist comments to Campbell. Lindsay told him what Brown had said. She also reported other general negative behavior towards herself and the team that she believed might have been motivated by race.

17. After Lindsay's report, the verbal harassment only intensified. Throughout the remainder of December 2019 and through January 2020, Campbell began constantly accusing Lindsay of not being available in the call center. He also forbade her from assisting other coworkers when they required help. This sort of behavior never happened before she engaged in protected activity.

18. Brown was emboldened by the lack of action following Lindsay complaint. She began to personally attack Lindsay, going so far as to make fun of a lump on Lindsay's neck which was a complication stemming from her disability.

19. Rodriguez and Anderson began spreading rumors about Lindsay. Rodriguez suggested to other coworkers that they move their desks away from Lindsay. In addition to this, Campbell and Rodriguez refused to allow Lindsay to complete tasks that she was qualified for. For example, she was not allowed to work the alerts and queues system, nor work on any of her task lists. They strictly assigned her to phone duty.

20. On or around January 2, 2020, Lindsay and several coworkers noticed another coworker sleeping on the job. Dawn Anderson, the lead manager at the time, walked by this coworker multiple times over a two hour period and did nothing. Frustrated with the sleeping coworker, Lindsay and others told Anderson they were going to take a picture to have proof

4

to bring to human resources.

21. After some time, a coworker requested that Anderson wake up the sleeping coworker, which she did. As she got the employee's attention, she stated "Please wake up, Desiree [Lindsay] is taking pictures of you sleeping," much to the shock of Lindsay and the gathered coworkers.

22. The following day, on or around January 3, 2020, Lindsay emailed Kandice Coleman in human resources to report what had happened the day prior, in addition to Brown's racial comments which she had previously reported to Campbell.

23. Later that very same day, Beth Schroeder, the Location Manager, came to Lindsays desk and berated her for not doing the tasks of "alert" and "queues." Lindsay had not been assigned these tasks by Gabriella, Campbell, or anyone else at Lowe's.

24. On or around January 9, 2020, Brown, unprompted and deliberately, forcefully shoved Lindsay while she was processing a product exchange. This occurred directly in front of Campbell, who, rather than reprimand Brown, laughed at the assault. Lindsay immediately reported the incident to human resources.

25. The following day, Lindsay received emails from Tracy Evans and Sarah Green in human resources, noting there would be a change in the investigator assigned to her complaints.

26. On January 15, 2020, Lindsay attempted to reach out to Green to discuss the two complaints she had filed. Around 1:00 p.m. that day, Lindsay got a hold of Green, who promptly hung up on her.

27. On January 16, 2020, the Company terminated Lindsay's employment. Campbell and Green cited multiple write-ups, which Lindsay had never even seen nor acknowledged, as the reason for termination. One of these write-ups centered around the use of her cell-phone to

5

Case 5:21-cv-00085-KDB-DCK     Document 1     Filed 06/03/21     Page 5 of 11

take a picture of her sleeping coworker.

28. On February 25, 2020, Lindsay filed a charge of discrimination with the Equal Employment Opportunity Commission.

29. On March 5, 2021, Lindsay received her dismissal and right-to-sue letter from the Equal Employment Opportunity Commission.

## IV. LEGAL CLAIMS

### Count I
### (Wrongful Discharge in Violation of Public Policy)
*Against all Defendants*

30. The allegations contained in the foregoing paragraphs are incorporated by reference herein.

31. Plaintiff was an at-will employee of Defendants.

32. Defendants employed at least fifteen (15) employees at all relevant times.

33. The public policy of North Carolina, codified in the North Carolina Equal Employment Practices Act, N.C. Gen. Stat. § 143-422.2(a), seeks to protect and safeguard the opportunity and right of all individuals to "seek, obtain, and hold employment without discrimination" on the basis of race, religion, color, national origin, age, sex or handicap.

34. North Carolina further defines "handicap" in the Persons with Disabilities Protection Act, N.C. Gen. Stat. § 168A-1 *et seq*. Desiree had a physical impairment that substantially limited one or more major life activities and had a record of such impairment. Likewise, Defendants regarded her as having such an impairment.

35. Defendants violated the public policy of North Carolina as set forth above by terminating Plaintiff because of his handicap and/or race.

36. As an actual, proximate, and foreseeable result of Defendants' actions, Plaintiff has suffered

lost back and front pay, lost benefits, diminution in her earning capacity, severe emotional distress, damage to his reputation, anxiety, depression, embarrassment, humiliation, and her peace of mind has been disturbed.

37. Defendants' actions were done maliciously, willfully, wantonly, and in a manner that demonstrates a reckless disregard for Plaintiff's rights. Defendants' officers, directors, and managers participated in and condoned this malicious, willful, wanton, and reckless conduct alleged above. As a result of Defendants' conduct, Plaintiff is entitled to recover punitive damages.

## Count II
### (*Violation of Title VII of the Civil Rights Act of 1964*)
### *Against all Defendants*

38. The allegations contained in the foregoing paragraphs are incorporated by reference herein.

39. Plaintiff is, and at all relevant times was, an employee covered by the protections of Title VII of the Civil Rights act of 1964 ("Title VII") as defined in 42 U.S.C. § 2000e(f).

40. Defendants are, and at all relevant times were, employers as defined in 42 U.S.C. § 2000e(b) subject to the prohibitions of Title VII.

41. Title VII prohibits discrimination based on race.

42. Title VII prohibits retaliation for complaining about racial discrimination.

43. Defendants violated Title VII by subjecting Plaintiff to a hostile work environment based upon her race. Plaintiff suffered intentional, unwanted harassment because of her race; the harassment was severe or pervasive; the harassment negatively affected the terms, conditions, or privileges of her employment; Defendants knew or should have known about the harassment and failed to take prompt, remedial action.

44. Defendants violated Title VII by terminating Plaintiff on the basis of her race.

45. Defendants violated Title VII by terminating Plaintiff in retaliation for engaging in protected activity.

46. As an actual, proximate, and foreseeable consequence of Defendants' conduct, Plaintiff has suffered lost income, diminution in expected earnings, emotional distress, anxiety, humiliation, expenses, reputational harm, and other damages and is entitled to recover compensatory damages in an amount to be determined at trial.

47. Defendants' actions were done maliciously, willfully, wantonly, and in a manner that demonstrates a reckless disregard for Plaintiff's rights. Defendants' officers, directors, and managers participated in and condoned this malicious, willful, wanton, and reckless conduct alleged above. As a result of Defendants' conduct, Plaintiff is entitled to recover punitive damages.

## Count III
### (*Violation of the Americans with Disabilities Act*)
### *Against all Defendants*

48. The allegations contained in the foregoing paragraphs are incorporated by reference herein.

49. Plaintiff was disabled in that she had physical impairments that substantially limited one or more major life and/or bodily functions: sleeping, eating, and working.

50. Defendants otherwise regarded Plaintiff as disabled at the time of her termination and in the lead up to Plaintiff's termination.

51. Plaintiff engaged in protected activity when she, in good faith, reported disability discrimination directed at her to Defendants.

52. Plaintiff suffered an adverse employment action when the Defendants terminated her

employment on the basis of her real or perceived disabilities and/or in retaliation for engaging in protected activity by complaining about disability discrimination and/or in retaliation for requesting and receiving a reasonable accommodation.

53. As an actual, proximate, and foreseeable result of Defendants' actions, Plaintiff has suffered lost back and front pay, lost benefits, severe emotional distress, severe physical distress, anxiety, depression, embarrassment, humiliation, physical pain and suffering, and her peace of mind has been disturbed.

54. Defendants' actions were done maliciously, willfully, wantonly, and in a manner that demonstrates a reckless disregard for Plaintiff's rights. Defendants' officers, directors, and managers participated in and condoned this malicious, willful, wanton, and reckless conduct alleged above. As a result of Defendants' conduct, Plaintiff is entitled to recover punitive damages.

## **Count IV**
### (*Violation of 42 U.S.C. § 1981*)
### *Against all Defendants*

55. The allegations contained in the foregoing paragraphs are incorporated by reference herein.

56. The foregoing allegations against Defendants constitute a deprivation of Plaintiff's right to make and enforce contracts on the same terms enjoyed by white persons, and otherwise continue discriminatory conduct on the basis of race against Plaintiff, in violation of 42 U.S.C. § 1981.

57. Defendants violated Section 1981 by subjecting Plaintiff to baseless write-ups, subjecting Plaintiff to higher performance expectations, and terminating her employment on the basis of her race and/or in retaliation for her race discrimination complaints.

58. Defendants also violated Section 1981 by subjecting Plaintiff to a hostile work environment

on the basis of her race. Plaintiff suffered intentional, unwanted harassment because of her race; the harassment was severe and pervasive; the harassment negatively affected the terms, conditions, or privileges of her employment; the harassment would detrimentally affect a reasonable person of the same race; and Defendants knew or should have known about the harassment and failed to take prompt, remedial action. As a result of the harassment, Plaintiff suffered severe emotional distress.

59. As an actual, proximate, and foreseeable consequence of Defendants' conduct, Plaintiff has suffered lost income, diminution in expected earnings, emotional distress, anxiety, humiliation, expenses, reputational harm, and other damages and is entitled to recover compensatory damages in an amount to be determined at trial.

60. Defendants' actions were done maliciously, willfully, wantonly, and in a manner that demonstrates a reckless disregard for Plaintiff's rights. Defendants' officers, directors, and managers participated in and condoned this malicious, willful, wanton, and reckless conduct alleged above. As a result of Defendants' conduct, Plaintiff is entitled to recover punitive damages.

**JURY TRIAL DEMANDED**

WHEREFORE, the Plaintiff prays the Court to:

1. Enter a judgment against Defendants and order the Defendants to pay Plaintiff compensatory damages in an amount to be determined at trial;

2. Award Plaintiff punitive damages pursuant to N.C. Gen. Stat. § 1D-1 *et seq.*, 42 U.S.C. § 1981a *et seq.*, and 42 U.S.C. § 1981 *et seq.*;

3. Order Plaintiff reinstated or order Defendants to pay front pay;

4. Award Plaintiff all reasonable costs and attorney's fees incurred in connection with this action;

5. Award Plaintiff such other and further equitable relief as the Court deems appropriate under the circumstances; and

6. Grant Plaintiff a trial of this matter by a jury.

This the 3rd day of June, 2021.

/s/ Sean F. Herrmann
Sean F. Herrmann
North Carolina Bar No. 44453
Kevin P. Murphy
North Carolina Bar No. 41467
Herrmann & Murphy, PLLC
1712 Euclid Avenue
Charlotte, North Carolina 28203
Phone: 704-940-6399
Fax: 704-940-6407
Email: kevin@herrmannmurphy.com
Email: sean@herrmannmurphy.com

*Attorneys for Plaintiff*